IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GWENDOLYN CARSWELL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:20-CV-02935-N |
| | § | |
| HUNT COUNTY, TEXAS, | § | |
| | § | |
| Defendant. | § | |

# MEMORANDUM OPINION AND ORDER

This Order addresses Defendant Hunt County's motion to dismiss [119]. The Court grants in part and denies in part the motion.

## I. ORIGINS OF THE DISPUTE

This is a jail conditions case. Carswell — Gary Lynch III's mother — filed this suit in response to Lynch's death while in custody at Hunt County Jail. She alleges that Hunt County violated Lynch's constitutional right to medical care. Pl.'s Second Am. Compl. ¶¶ 10–11 [116].

Lynch entered Hunt County Jail on February 12, 2019.[1] *Id.* ¶ 61. Throughout his detainment, he experienced chest and arm pain, low blood pressure, difficulty breathing, headaches, nausea, dizziness, weakness, and lack of appetite. *Id.* ¶¶ 23–24, 33, 39, 45, 52, 76. Hunt County Jail personnel knew of Lynch's declining health because his symptoms were observable, he told them about his symptoms, and other detainees raised

---

[1] The Court accepts the allegations in Plaintiff's complaint as true for the purposes of this Order.

MEMORANDUM OPINION AND ORDER – PAGE 1

concerns about his symptoms. *Id.* ¶¶ 14–15, 21–24, 26, 41, 45, 51–54. At one point, Vi Wells, a nurse at the jail, told a detainee that Lynch's blood pressure was low and then directed the detainee to keep an eye on Lynch. *Id.* ¶ 23; *see also id.* ¶ 36 ("But cellmates were told they needed to take care of [Lynch]."). On a different occasion, Helen Landers, another nurse, stopped outside of Lynch's cell to conduct a blood pressure check, but Lynch was too weak to get out of his bunk bed. *Id.* ¶ 25. Landers marked on a blood pressure check form that Lynch refused the check instead of entering the cell to perform the check. *Id.* ¶¶ 25, 47. Further, the blood pressure check form included an entry on the day after Lynch died, indicating that personnel made false entries on the form. *Id.* ¶ 72. A detainee also asked Officer Kolbee Perdue to check on Lynch. Lynch told Perdue about his symptoms, and Perdue stated that he would move Lynch to a bottom bunk, but Perdue did not do that or anything else to address Lynch's medical issues. *Id.* ¶¶ 26–27.

Then, on February 19, a gas leak was discovered at Hunt County Jail, so personnel evacuated all detainees from the facility and transferred Lynch to Tarrant County Jail. *Id.* ¶ 10. While at Tarrant County Jail, Lynch collapsed in a hallway while holding his chest. *Id.* ¶ 16. Sergeant Scotty York grabbed Lynch and told him to get up, then placed him in a cell. *Id.* ¶¶ 17, 31. Lynch returned to Hunt County Jail on February 22. *Id.* ¶ 10. After he returned, his eyes looked yellow. *Id.* ¶ 53.

On the morning of February 23, Officer Robinson conducted floor checks at the jail but failed to do more than pull back a curtain and briefly glance through a window into Lynch's cell. *Id.* ¶ 56. Lynch was on the upper bunk at the back of the cell, so it would have been difficult to see him through the window. *Id.* Soon after Officer Robinson's cell

MEMORANDUM OPINION AND ORDER – PAGE 2

check, detainees started yelling that they had found Lynch dead in the cell. *Id.* ¶¶ 57, 61–62. It took several minutes after that for personnel to arrive at the cell. *Id.* ¶ 34. The medical examiner who conducted Lynch's autopsy concluded that he died because of aortic valve endocarditis with myocardial abscess. *Id.* ¶ 60. This is a treatable condition, and Lynch would have survived if he had received appropriate medical intervention. *Id.*

Carswell alleges that several of the County's practices contributed to Lynch's death, including (1) failing to provide emergency or necessary medical care; (2) failing to monitor detainees; (3) failing to staff the facility adequately; (4) failing to communicate medical needs between shifts; and (5) failing to train personnel. *Id.* ¶ 84. Additionally, the Texas Commission on Jail Standards ("TCJS") has determined on several occasions that Hunt County Jail was not in compliance with minimum jail operations standards. *Id.* ¶¶ 85–99. Further, eight other detainees with serious physical or mental health conditions have died in Hunt County Jail between 2006 and 2024. *Id.* ¶¶ 100–08.

Carswell now brings a section 1983 cause of action against Hunt County for the violation of Lynch's Fourteenth Amendment right to medical care under *Monell*, conditions-of-confinement, episodic-act-or-omission, and failure-to-train theories.[2] *Id.* ¶¶ 7, 113. Hunt County now moves to dismiss Carswell's claims. *See generally* Def.'s Mot. Dismiss [119].

---

[2] Carswell originally brought claims against several jail personnel as well but has since moved to dismiss them with prejudice, which the Court granted. *See* Order (May 24, 2024) [115].

## II. RULE 12(B)(6) LEGAL STANDARD

When deciding a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

In ruling on a Rule 12(b)(6) motion, a court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, a court may also consider documents outside of the pleadings if they fall within certain limited categories. First, a "court is permitted . . . to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)). Second, a "written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). Third, a "court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)). Finally, in "deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994); *see also, e.g.*, *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (stating, in upholding district court's dismissal pursuant to Rule 12(b)(6), that the "district court took appropriate judicial notice of publicly-available documents and transcripts produced by the FDA, which were matters of public record directly relevant to the issue at hand").

### III. THE COURT GRANTS IN PART AND DENIES IN PART THE MOTION TO DISMISS

Carswell alleges that Hunt County violated Lynch's Fourteenth Amendment right to medical care. Pl.'s Second Am. Compl. ¶ 110. Her theories of liability against the County include *Monell*, conditions-of-confinement, episodic-act-or-omission, and failure-to-train. *See id.* ¶¶ 78, 84. The Court addresses each of these theories in turn.[3]

---

[3] Hunt County argues that Carswell's claims are barred by res judicata, waiver, or *Heller*. Def.'s Mot. 4–5. The County asserts that because the Court granted Carswell's motion to dismiss her claims against the individual-employee defendants with prejudice, she cannot state an underlying constitutional violation by a County employee, so she fails to state a constitutional violation in support of her claims against the County. *Id.* at 4. The Court disagrees. Carswell's decision to dismiss her claims against the individual-employee

MEMORANDUM OPINION AND ORDER – PAGE 5

### A. Legal Standards for Monell *Claims and Conditions-of-Confinement Claims*

Under 42 U.S.C. § 1983, every "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected," any person to the deprivation of any federally protected rights, privileges, or immunities, shall be civilly liable to the injured party. "Municipalities can be held liable for violating a person's constitutional rights under § 1983." *Est. of Bonilla v. Orange County*, 982 F.3d 298, 308 (5th Cir. 2020) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978)). However, a municipality cannot be held liable solely on a respondeat-superior theory. *Monell*, 436 U.S. at 691.

To state a claim for municipal liability under *Monell*, a plaintiff must plead facts that plausibly establish three elements: (1) a policymaker; (2) an official custom or policy; and (3) a violation of constitutional rights whose moving force is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*, 436 U.S. at 694). Similarly, to state a conditions-of-confinement claim, "a plaintiff must plead facts that plausibly establish '(1) a condition — a rule, a restriction, an identifiable intended condition or practice, or sufficiently extended or pervasive acts or omissions of jail officials — (2) that is not reasonably related to a legitimate government objective and (3) that caused the constitutional violation.'" *Rangel v. Wellpath, LLC*, 2024 WL 1160913, at *6 (N.D. Tex. 2024) (quoting *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (cleaned up)).

---

defendants does not constitute an admission that jail personnel did not participate in the alleged violation of Lynch's constitutional rights.

MEMORANDUM OPINION AND ORDER – PAGE 6

The Fifth Circuit has observed that there is "no meaningful difference between the[] showings" required for *Monell* and conditions-of-confinement claims. *See Bonilla*, 982 F.3d at 308 (quoting *Duvall v. Dallas County*, 631 F.3d 203, 208 (5th Cir. 2011)). Further, the standards of causation appear to be the same for both kinds of claims. *Id.* "The key difference is that a *Monell* claim requires the plaintiff to show that the 'municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision,'" while a conditions-of-confinement claim does not require a showing of deliberate indifference. *Rangel*, 2024 WL 1160913, at *6 (first quoting *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010), then citing *Duvall*, 631 F.3d at 207).

### B. Carswell Does Not Plausibly Allege a *Monell* Claim

First, the Court analyzes Carswell's *Monell* claim against Hunt County. The Court addresses each element of *Monell* liability in turn.

*1. Policymaker* — Carswell identifies the sheriff of Hunt County as the relevant policymaker over the policies at issue. *See* Pl.'s Second Am. Compl. ¶ 112. "In Texas, the sheriff is a county's 'final policymaker in the area of law enforcement' and in county jails." *Guerra v. Childress County*, 2024 WL 4673928, at *4 (N.D. Tex. 2024) (quoting *Colle v. Brazos County*, 981 F.2d 237, 244 (5th Cir. 1993) and citing *Feliz v. El Paso County*, 441 F. Supp. 3d 488, 503 (W.D. Tex. 2020)). And "'the specific identity of the policymaker is a legal question that need not be pled' in the complaint to survive a motion to dismiss." *Balle v. Nueces County*, 952 F.3d 552, 559 (5th Cir. 2017) (quoting *Groden*

*v. City of Dallas*, 826 F.3d 280, 284 (5th Cir. 2016)). Accordingly, the Court determines that Carswell has sufficiently alleged the policymaker element of the *Monell* claim.

*2. Official Custom or Policy* — Next, there are three ways to establish a municipality's official custom or policy: (1) "written policy statements, ordinances, or regulations," (2) "a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy," and (3) "a single decision . . . when the official or entity possessing final policymaking authority for an action performed the specific act that forms the basis of the § 1983 claim." *St. Maron Props., L.L.C. v. City of Houston*, 78 F.4th 754, 760 (5th Cir. 2023) (citing *Webb v. Town of St. Joseph*, 925 F.3d 209, 214–15 (5th Cir. 2019)).

Here, Carswell alleges that Hunt County had four types of widespread practices constituting official customs giving rise to the *Monell* claim: (1) failing to provide emergency or necessary medical care; (2) failing to monitor detainees; (3) failing to staff the facility adequately; and (4) failing to communicate medical needs between shifts.[4] Pl.'s Second Am. Compl. ¶¶ 79, 81, 84.

First, Carswell alleges facts that, if true, support her claim that Hunt County had a policy of failing to provide emergency or necessary medical care to detainees. She pleads that throughout Lynch's detainment, jail personnel ignored Lynch's worsening condition, Lynch's complaints about his health, and fellow detainees' concerns regarding Lynch's

---

[4] Carswell also alleges that Hunt County had a policy of failing to train personnel. Because a separate analytical framework applies to failure-to-train policies, the Court analyzes the alleged failure-to-train policy separately.

MEMORANDUM OPINION AND ORDER – PAGE 8

health. *Id.* ¶¶ 14–15, 21–24, 26, 41, 45, 51–54. Moreover, Carswell alleges that Hunt County "refuse[s] to provide medical treatment and always denies [detainees] from going to the hospital seeking medical [treatment]." *Id.* ¶ 41 (cleaned up). Carswell also pleads that other detainees at Hunt County have died from the County's failure to provide emergency or necessary medical care. *See id.* ¶¶ 102–04, 108. And inspections by TCJS found that not "all jailers were receiving life safety training." *Id.* ¶ 91. Taken together, the Court determines that these pleadings are sufficient to support a reasonable inference that Hunt County had a custom of failing to provide emergency or necessary medical care to detainees.

Second, Carswell alleges facts that, if true, support her claim that Hunt County had a widespread practice of failing to monitor detainees, and relatedly, failing to communicate medical needs between shifts. She pleads that jail personnel did not conduct blood pressure checks faithfully, and at times even fabricated such checks. Pl.'s Second Am. Compl. ¶¶ 25, 72. Further, floor checks constituted merely "pulling back a curtain and briefly glancing through a window" into multiperson cells, which was not thorough enough to monitor detainees' medical needs. *Id.* ¶¶ 47, 56, 70. Personnel even directed detainees to monitor other detainees' medical conditions instead of monitoring the detainees themselves. *Id.* ¶¶ 23, 36. Relatedly, Hunt County failed TCJS inspections for not adhering to minimum standards related to medical documentation and for failing to log observations of detainees adequately or faithfully. *Id.* ¶¶ 92–94. These pleadings support an inference that Hunt County regularly failed to monitor detainees and communicate detainees' medical needs between shifts. *See Sanchez*, 956 F.3d at 793 (finding failing to monitor

MEMORANDUM OPINION AND ORDER – PAGE 9

and covering up a failure to monitor can be evidence of extensive or pervasive misconduct). Accordingly, Carswell has sufficiently pled that these practices constitute customs that fairly represent Hunt County policies.

Third, Carswell's pleadings related to failure to monitor and failure to communicate between shifts support an inference that the County failed to staff the jail adequately as the failure to staff the jail adequately likely contributed to the pervasiveness of the other practices. Carswell also alleges that the TCJS inspections showed that the several shifts were understaffed. Pl.'s Second Am. Compl. ¶ 94. Accordingly, the Court determines that Carswell alleges facts that, if true, support her claim that Hunt County had a widespread practice of failing to staff the jail adequately.

Thus, construing the complaint in the light most favorable to Carswell, the Court holds that Carswell has alleged the official-custom-or-policy element of her *Monell* claim.

3. **Moving Force** — *Monell* liability further requires that the challenged customs be the "moving force" behind the alleged constitutional violation. *Piotrowski*, 237 F.3d at 580. Accordingly, Carswell must plead "a direct causal link between the municipal policy and the constitutional deprivation." *Id.*

Here, Carswell states that the County's customs — failing to provide emergency medical care; failing to monitor detainees; failing to staff the facility adequately; and failing to communicate medical needs between shifts — "worked individually or in the alternative together to cause [Lynch's] death." Pl.'s Second Am. Compl. ¶ 82. This is plausible given Carswell's allegation that the "illness that caused Gary's death was curable, and there were signs of that illness for days before he died." *Id.* ¶ 44. And she pleads several examples

MEMORANDUM OPINION AND ORDER – PAGE 10

of County employees failing to monitor Lynch properly or provide him with the medical attention he needed. *See id.* ¶¶ 21–26, 41, 45, 47, 51–56, 70, 72. The Court determines that Carswell's allegations support her theory that Hunt County Jail's customs of failing to monitor and treat detainees with emergency or necessary medical needs — and relatedly, failing to staff the facility adequately — caused Lynch's death.[5] *See Shepherd v. Dallas County*, 591 F.3d 445, 453 (5th Cir. 2009) (finding plaintiff's injuries were the direct and inevitable result of the jail's gross inattention to needs of inmates with chronic illness); *Nichols v. Brazos County*, 2020 WL 956239, at *9 (S.D. Tex. Feb. 2020) (finding pleading that policy resulted in plaintiff not receiving medication, which led to plaintiff's death, was sufficient for moving force element); *Feliz*, 441 F. Supp. 3d at 504 (finding allegation that de facto policy of denying medical care to mentally ill detainees was moving force behind plaintiff's death).

Thus, Carswell has plausibly alleged that a direct causal link exists between the County's policies and the violation of Lynch's constitutional rights.

***4. Deliberate Indifference*** — Lastly, Carswell must plead that "the municipal action was taken with the requisite degree of culpability," which is "'deliberate indifference to the risk that a violation of a particular constitutional or statutory remedy will follow' the officials' decisions." *Guerra*, 2024 WL 4673928, at *5 (quoting *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404, 411 (1997)). This is an "extremely high standard

---

[5] Claims based on jail conditions or customs "can be based on multiple interacting policies" if the interacting policies "have 'a mutually enforcing effect that produces the deprivation of a single, identifiable human need.'" *See Sanchez*, 956 F.3d at 795–96 (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)).

to meet." *Austin v. City of Pasadena*, 74 F.4th 312, 328 (5th Cir. 2023) (quoting *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001)).

Carswell may plead deliberate indifference in two ways. First, she may show deliberate indifference through "'a pattern of similar violations' that come from a policy or custom 'that is so clearly inadequate as to be obviously likely to result in a constitutional violation.'" *Guerra*, 2024 WL 4673928, at *5 (quoting *Burge v. St. Tammary Par.*, 336 F.3d 363, 370 (5th Cir. 2003)). Second, she may show it through "a single incident . . . if 'the facts giving rise to the violation are such that it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy.'" *Id.* (quoting *Burge*, 336 F.3d at 373). For either way, "showing 'simple or even heightened negligence will not suffice.'" *Id.* (quoting *Valle*, 613 F.3d at 542).

The Court finds that Carswell has not sufficiently alleged municipal deliberate indifference regarding the four County customs. First, Carswell has not alleged a pattern of similar violations caused by the customs. Although she provides descriptions of eight other detainees dying at Hunt County Jail, she has not pled how the four County customs caused those deaths. For example, Carswell's allegations regarding one of the deaths consists of:

> On November 21, 2012, Melanie Lynn Smith died after being in the Hunt County jail. On November 13, 2012, at approximately 6:00 p.m., Smith complained of knee pain. A medical supervisor spoke with Smith and determined that no medical attention was allegedly necessary. Smith was eventually transported to the Hunt Regional Medical Center in Greenville, Texas. She died after a determination that she needed dialysis that the local hospital was unable to provide.

MEMORANDUM OPINION AND ORDER – PAGE 12

Pl.'s Second Am. Compl. ¶ 103. In Smith's situation, a medical supervisor spoke with Smith, and the County sent Smith to a medical center, unlike in Lynch's situation, where the County did not send him to a medical center. And Carswell does not otherwise explain how the County's four customs contributed to Smith's death. Moreover, several of the other detainees who passed away had severe mental illness, which is distinguishable from Lynch's physical illness, and it is not clear that the County customs at issue here caused their deaths. *Id.* ¶¶ 101, 105–07. These deaths do not demonstrate a pattern of similar constitutional violations sufficient to demonstrate deliberate indifference on the part of the Hunt County sheriff.[6] Second, Carswell has not made allegations supporting that Lynch's death falls within the single-incident exception; it is not reasonably inferable from the pleadings that it would have been apparent to the sheriff that Lynch's death was the highly predictable consequence of the four County customs.

Because Carswell has not met the "extremely high standard" for pleading deliberate indifference, *Austin*, 74 F.4th at 328, her *Monell* claim against Hunt County fails.

### C. Carswell Plausibly Alleges a Conditions-of-Confinement Claim

Next, the Court addresses Carswell's conditions-of-confinement claim. A conditions-of-confinement claim is a "constitutional attack on 'general conditions, practices, rules, or restrictions of pretrial confinement.'" *Bonilla*, 982 F.3d at 308 (quoting *Flores v. Hardeman County*, 124 F.3d 736, 738 (5th Cir. 1997)). The "proper inquiry is

---

[6] Further, Carswell has not specifically alleged that the County's failed TCJS inspections — which support the official-policy-or-custom element of the *Monell* claim — caused a pattern of similar constitutional violations, so the failed TCJS inspections do not bolster the deliberate indifference element of the *Monell* claim.

whether those conditions amount to a punishment of the detainee." *Id.* (citation omitted). The only meaningful difference between the *Monell* and conditions-of-confinement standards is that a *Monell* claim requires the plaintiff to show deliberate indifference, while a conditions-of-confinement claim does not. *See supra* Section III.A.

As the Court discussed in Section III.B.2, Carswell has identified four practices of Hunt County Jail — failing to provide emergency or necessary medical care; failing to monitor detainees; failing to staff the facility adequately; and failing to communicate medical needs from one shift to another. The Court determines that these practices amount to a condition leaving detainees with no avenue to access emergency medical care, which cannot be reasonably related to a legitimate governmental objective. *See Albritton v. Henderson County*, 2024 WL 1776380, at *5 (N.D. Tex. 2024). And, as discussed in Section III.B.3, Carswell has sufficiently pled that these practices caused Lynch's death. As a result, the Court holds that Carswell has plausibly alleged all elements of the conditions-of-confinement claim.

### D. Carswell Does Not Plausibly Allege an Episodic-Act-or-Omission Claim

Alternatively, Carswell brings an episodic-act-or-omission claim against Hunt County. Pl.'s Second Am. Compl. ¶ 83. "Under an episodic-acts-or-omissions theory, 'a plaintiff must show (1) that the municipal employee violated [the pretrial detainee's] clearly established constitutional rights with subjective deliberate indifference; and (2) that this violation resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference.'" *Rangel*, 2024 WL 1160913, at *13 (quoting *Cadena v. El Paso County*, 946 F.3d 717, 727 (5th Cir. 2020)). For the first prong, subjective

MEMORANDUM OPINION AND ORDER – PAGE 14

deliberate indifference requires that the "jail official must have 'had subjective knowledge of a substantial risk of serious harm to the detainee and responded to that risk with deliberate indifference.'" *Id.* (quoting *Est. of Henson v. Wichita County*, 795 F.3d 456, 464 (5th Cir. 2015)). Such subjective knowledge "requires that the official be 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists' and then actually 'draw the inference.'" *Id.* (quoting *Est. Of Henson v. Krajca*, 440 F. App'x 341, 343 (5th Cir. 2011) (unpub.)); *see also Whitley v. Hanna*, 726 F.3d 631, 641 (5th Cir. 2013) ("The state actor's actual knowledge is critical to the inquiry." (citation omitted)).

Here, Carswell has alleged that the jail personnel were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed to Lynch; Lynch's declining condition was observable, he told personnel about his symptoms, and other detainees raised concern to personnel about Lynch's health. Pl.'s Second Am. Compl. ¶¶ 14–15, 21–24, 26, 41, 45, 51–54. However, Carswell has not alleged that any personnel who failed to procure emergency medical treatment for Lynch actually drew the inference that there was a substantial risk of serious harm to him and then were deliberately indifferent to that risk. As a result, the Court dismisses Carswell's episodic-act-or-omission claim.

### E.  Carswell Does Not Plausibly Allege a Failure-to-Train Claim

Lastly, the Court addresses Carswell's failure-to-train claim. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on failure to train." *Taylor v. Hartley*, 488 F. Supp. 3d 517, 535 (S.D. Tex. 2020) (quoting *Connick*

MEMORANDUM OPINION AND ORDER – PAGE 15

*v. Thompson*, 563 U.S. 51, 61 (2011)). To state a failure-to-train claim, a plaintiff must plead that (1) "the training procedures of the municipality's policymaker were inadequate," (2) "the policymaker was deliberately indifferent in adopting the training policy," and (3) "the inadequate training policy directly caused the plaintiff's injury." *Id.* (citing *Conner v. Travis County*, 209 F.3d 794, 796 (5th Cir. 2000)); *see also Benfer v. City of Baytown*, 120 F.4th 1272, 1286–87 (5th Cir. 2024). Regarding the first element, the focus is on the "adequacy of the training program in relation to the tasks the particular officer must perform," and "the plaintiff must allege with specificity how the training program is defective in this regard." *Taylor*, 448 F. Supp. 3d at 535 (citing *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998), then citing *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005)).

Here, Carswell pleads that Hunt County did not (1) train personnel on suicide prevention training properly; and (2) did not train Landers— a nurse — properly because she was "below average in her knowledge of jail standards, department policy and procedure, and detainee rules." Pl.'s Second Am. Compl. ¶ 84. First, the Court determines that Carswell has failed to allege how the inadequate suicide prevention training policy caused Lynch's death; Carswell did not plead that Lynch had a mental illness or died by suicide. Second, the Court finds that Carswell failed to allege how the County's training program was inadequate in relation to the tasks that Landers performs. Moreover, regarding both the suicide prevention and nurse training policies, Carswell has not pled facts supporting an inference that the Hunt County sheriff was deliberately indifferent in

adopting either policy. Accordingly, the Court holds that Carswell has failed to plausibly allege that Hunt County is liable under a failure-to-train theory.

## CONCLUSION

Because Carswell has stated a plausible conditions-of-confinement claim against Hunt County, the Court denies the County's motion to dismiss that claim. However, because Carswell has not stated plausible *Monell*, episodic-act-or-omission, and failure-to-train claims against the County, the Court grants the motion to dismiss those claims with prejudice. Moreover, because Carswell has already amended her complaint twice, the Court denies her request for leave to amend the complaint.

Signed March 26, 2025.

David C. Godbey
United States District Judge